UNITED STATES *v.* N. MINAMI & CO., INC. (No. 4350)[1]

---

United States Court of Customs and Patent Appeals,
December 29, 1941

*Paul P. Rao*, Assistant Attorney General (*Charles D. Lawrence*, special assistant to the Attorney General, and *Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Samuel M. Richardson*, of counsel) for appellee.

[Oral argument October 7, 1941, by Mr. Lawrence and Mr. Richardson]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the United States Customs Court, Second Division, awarding the importer a refund of a portion of the duties assessed and collected by the Collector of Customs at the port of New York, upon an importation of articles commonly referred to in the record as Christmas wreaths. Two protests, each covering two entries of the merchandise, are involved, the cases having been consolidated below for trial.

A sample, agreed by counsel for the parties to be illustrative of all the merchandise, was introduced in evidence. From it, taken in

connection with the oral testimony, it appears that the wreaths are constructed of wood-chip to which is attached a paper-covered wire cord having a socket for an electric light, there being a plug at one end of the cord designed for insertion in a wall socket, and that the wreaths are used, generally at Christmas time, for decorative purposes, usually in homes, being hung in windows and electrically lighted at night, the bulb socket in the wreath being equipped with an element which lights the bulb when the cord is plugged into the wall socket.

The merchandise was classified under paragraph 397 of the Tariff Act of 1930 which provides, in part, as follows:

PAR. 397. Articles or wares not specially provided for * * *; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

The protests of the importer embraced alternative claims, but all claims seem to have been abandoned except that under the language of paragraph 353, reading:

PAR. 353. * * *
articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;
all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem. '

The foregoing claim was sustained by the trial court which said, *inter alia:*

We regard this illuminated wreath as an article "having as an essential feature an electrical element or device, such as electric * * * signs." In fact, it is difficult to conceive how an article could more closely resemble an electric sign than does this wreath. Like a sign, this wreath is illuminated only at night, and ordinarily during certain hours. Accordingly, we do not agree with counsel for the defendant that these wreaths are not similar to any of the exemplers named in said paragraph 353.

In its decision the trial court cited its decision in a former case between the same parties (*M. Minami & Co., Inc.* v. *United States,* 1 Cust. Ct. 307, C. D. 72), from which no appeal was taken, and stated, in effect, that it saw no reason for not adhering thereto. The record in that case was incorporated in that of the instant case and the identical exhibit illustrative of the merchandise at issue which was there introduced in evidence was introduced here. Some additional oral testimony was introduced on behalf of both parties in the instant case, but evidently it was not regarded by the trial court as establishing any facts relative to the nature of the merchandise which justified a judgment different from that rendered in the prior case.

In view of what we deem to be the importance of the decision here, we regard it proper to point out that the trial court's decision in the

former case seems to have differed in some particulars from its decision in the instant case, although the same result followed in both decisions. Its decision in the former case seems to have rested upon the ground that the "merchandise is at least a part of an article having as an essential feature an electrical element or device, within the contemplation of said paragraph 353, to wit, the wiring, socket, and plug, and ultimately the incandescent lamp which will complete the whole," and no specific reference was made to the phrase "such as," appearing in the third subparagraph of paragraph 353, *supra*, whereas in the instant case nothing was said of the merchandise being a part, and the phrase "such as" was specifically applied. Furthermore, in its decision in the former case the court said "We * * * hold that our decision in the case of *German American Import Co.* v. *United States*, T. D. 46488, 63 Treas. Dec. 1130, is here controlling." It appears from the decision in the last named case (from which no appeal seems to have been taken) that the merchandise consisted of "Christmas-tree lighting sets" quite different in character from the Christmas wreaths involved in the former *Minami & Co.* case, *supra*, and involved here, and that they were held classifiable under paragraph 353, *supra*, by reason of the first subparagraph thereof, reading, "articles suitable for * * * distributing electrical energy," which is entirely different from the language under which the claims in the respective *Minami* cases were made.

As the issue has been presented to us in the instant case no reliance has been placed by the importer upon the first subparagraph of paragraph 353, nor has there been any allusion to the matter of parts. In view of the wide range of articles to which paragraph 353 may be applied and the difficulties sometimes attendant upon the efforts to determine whether it is applicable, we have deemed it not improper (particularly because of the trial court's references to them as recited) to refer to the above prior decisions of the Customs Court, not for the purpose of expressing any views thereon, but for the purpose of saying that our decision in the instant case should not be taken as either approving or disapproving them.

We think the ultimate issue in this case, as it has been presented before us, is confined within a narrow limit which may be stated in question form, viz: Are the articles involved articles which have as an essential feature an electric element such as signs? In our view, they are not such as any other articles specified *eo nomine* in paragraph 353, *supra*. If they be "such as signs" the judgment appealed from should be affirmed; if not, upon the record before us, the collector's classification should be sustained.

The Government's argument before us is stated under three points.

It is first argued, in substance, that the court may take judicial notice of the fact that there are many kinds and types of electric signs

which usually spell out some words and have as their "chief objective a utilitarian character"; that the wreaths at bar do not spell out any word; that they have no useful existence "other than decorative"; that they are no more signs than ordinary tallow candles when lighted and that they are more nearly similar to "electric lighting fixtures" than to signs. In this connection, the Government cites our decision in the case of *A. N. Khouri & Bro.* v. *United States,* 22 C. C. P. A. (Customs) 28, T. D. 47037.

Under the second point it is argued that the light which is a part of the wreath is not in a true sense an essential feature of the wreath; that the wreath is for decorative purposes and that "the electric light in the form of a candle merely adds to the element of decoration, but is not essential to that element."

As a third point, the Government invokes the legislative history of paragraph 353, seemingly upon the theory that the word "signs" used therein is "subject to various interpretations," and that, therefore, ambiguity exists.

The points so made will be considered substantially in the order stated, except that the contention respecting the wreaths being more nearly similar to electric-lighting fixtures than to electric signs and the contentions with respect to the differences in signs will be discussed in connection with such legislative history as is deemed to be pertinent.

We do not regard as having any particular force the argument to the effect that, because the wreaths are used solely for decorative purposes, the electrical element embraced therein and used in illuminating them is not an essential element. The electrical feature obviously must have been inserted in the wreaths to serve a desired purpose at a particular time and the mere fact that it is not used at all times would not, in our opinion, justify a holding that it is not essential. As a rule, electric lights do not burn during daylight hours except under unusual conditions, but the element which enables the light to be produced when desired is nonetheless essential. We agree with the following statement of the trial court:

* * * From our examination of said Illustrative Exhibit A we are satisfied that the electrical element or device therein may not properly be considered as a nonessential feature in the article. Its location in the lower center of the wreath, and the fact that it occupies considerable of the otherwise empty space there, should not be entirely ignored in determining the tariff status of the article. Its arrangement, and the way it is displayed, constitutes the electrical device a conspicuous and prominent part of the wreath. Surely, the electrical feature would mean something to a prospective purchaser who wanted that precise article, and in all likelihood it would be reflected in the price as compared with a wreath not so equipped.

With respect to the *Khouri & Bro.* case, *supra,* it seems proper to say at this point that in our study of the instant case we have taken

occasion to reexamine the record which was there presented, as well as our opinion (written by the writer of the instant opinion), with the result that while we have no doubt as to the correctness of our conclusion there, so far as the issue actually before us was concerned, it must be conceded that the opinion contained certain *dicta* not essential to the decision.

The specific claim of the importer in that case, as set forth in its assignment of errors and presented in its brief, was that the merchandise was classifiable as "articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy," and the specific language of the clause which is here relied upon was not there invoked. That the claim was so limited before the trial court is apparent from its decision, rendered June 1, 1933, appearing in full in the record of that case and briefly stated as Abstract 24294, 63 Treas. Dec. 1564.

One of the allegations of error before us in that case related to the action of the trial court in excluding certain testimony and exhibits offered by the importer, apparently for the purpose of showing the association in use of lamp bases and wires, bulbs, switches, and sockets (the exhibits tendered), and in overruling that assignment we said, *inter alia*, "Such wires, bulbs, switches, and sockets are not the character of elements to which we think the paragraph alludes." The Government emphasizes that expression in its argument in the instant case because, as we understand it, of its contention to the effect that the involved merchandise is similar to lighting fixtures, but it does not contend that it necessarily controls here.

Inasmuch as the claim of the importer in that case was limited as above described, the expression so quoted from our decision was unnecessary in a determination of the case upon the merits.

With respect to the argument embraced in the second point to the effect that the *light* which is a part of the wreath is not in a true sense an essential feature, it seems proper to say that strictly speaking it is not the light itself which is involved, but the electrical element through which the light is produced. The cases cited under point II have been carefully examined and it is sufficient to say that we feel confident they have no application to this case.

The headnote of the Government's third point reads:

The legislative history of paragraph 353 of the Tariff Act of 1930 discloses that it was not the intent of Congress to include *lighting fixtures* under said paragraph. [Italics ours.]

We have emphasized the phrase "lighting fixtures" in the foregoing quotation because we deem it important to point out at the outset that we find no *eo nomine* provision for lighting fixtures in the Tariff Act of 1930.

We may say here that this court has regarded paragraph 353 of the Tariff Act of 1930, *supra* (which was new in that act), or at least parts of it, as being ambiguous, and in different decisions recourse has been had to its legislative history as an aid in construing it. *United States* v. *R. W. Cramer & Co., Inc.*, 22 C. C. P. A. (Customs) 45, T. D. 47049; *Ralph C. Coxhead Corp.* v. *United States*, 22 C. C. P. A. (Customs) 96, T. D. 47080. In the *Khouri & Bro.* case, *supra*, the legislative history was referred to but not recited.

Reference may be had to those decisions for such legislative history as was deemed pertinent in those cases. Much of it has little bearing on the issue now before us and need not be repeated.

Such legislative history as is deemed particularly pertinent here may be stated as follows:

H. R. 2667, which eventuated in the Tariff Act of 1930, as reported from the Committee on Ways and Means and as it passed the House, carried a paragraph numbered 387 which read:

PAR. 387. Illuminating or lighting fixtures, lamps, lamp bases, candelabra, and candlesticks, any of the foregoing and parts thereof, finished or unfinished, not specially provided for, if wholly or in chief value of base metal or alloy, 50 per centum ad valorem; if wholly or in chief value of, or plated with, platinum, gold, or silver, 65 per centum ad valorem.

No special reference was made to it in the report of the Committee on Ways and Means which accompanied the bill, but it was printed in italics in the report, thus indicating it to be a change from the Tariff Act of 1922.

In the report of the Senate Committee on Finance which accompanied the bill when reported to the Senate (Senate Report No. 37, 71st Congress, 1st session, page 19) the following appears:

Paragraph 387.—Lighting Fixtures

Provision for lighting fixtures has been eliminated with the intent of making them dutiable under the basket paragraph 398.

That number—398—referred to the bill as it was laid before the Senate. In the subsequent renumbering of paragraphs in the act, it became No. 397, under which the merchandise here at issue was classified by the collector. It corresponds to paragraph 399 of the 1922 act.

In addition to the foregoing a statement was contained in that portion of the Senate committee's report relating to paragraph 353 which read:

It is not intended that this paragraph should include lighting fixtures, provided for in paragraph 387 of the House bill, and eliminated therefrom by the Senate committee.

After the bill, H. R. 2667, had passed both Houses of Congress and before the conferences between managers of the respective Houses

were held, the United States Tariff Commission prepared a supplement to tariff information relating to items in the bill which were subject to conference. Reports of the United States Tariff Commission, vol. 29. The discussion of paragraph 353 begins on page 198 of the volume. While that discussion is interesting, such of it as might be regarded as having any bearing upon the instant case is expressed in the committee reports and need not be quoted here.

The discussion of the stricken paragraph 387 of the House bill is found on page 232 of vol. 29, Tariff Commission Report, where it is said, *inter alia:*

Under the act of 1922 and bill as passed by the Senate, lighting fixtures, lamps, candlesticks, and candelabra are dutiable as manufactures of metal, n. s. p. f. In the House bill special provision was made for them, but the same rates of duty were provided that were levied in the basket clause in that bill. In the Senate the paragraph was eliminated, thereby returning the articles to the general provision in paragraph 398.

In the statement of the managers on the part of the House, filed in connection with the conference report (H. R. Report 1892, 71st Congress, 2nd session) at page 64, it was said that the effect of striking out the paragraph 387 (to which the House agreed) was "to throw the items into the basket clause of the metal schedule."

From the foregoing it is our tentative view that it was not the intention of Congress to include lighting fixtures, even though of an electrical character, in paragraph 353, but that it was intended that they should be classified under what eventually became paragraph 397. It is true that there is no reference in paragraph 397 to articles having an electrical element, but unless it was intended to include therein some articles having such an element, much of the discussion of paragraph 353—the electrical paragraph—by the Senate Committee's report above quoted would seem to be without meaning.

The foregoing tentative view as to the tariff status of lighting fixtures does not solve the problem here involved, for the reason that lighting fixtures are not named in paragraph 397, nor, as has been indicated, in any other paragraph of the act. Paragraph 397 does not contain an *eo nomine* provision for any article. It is not contended that the involved wreaths are lighting fixtures *per se*, but simply that they resemble electric lighting fixtures more nearly than they resemble electric signs. In other words, the logic of the Government's position (although it has made no such specific contention) would seem to be that they should be held *ejusdem generis* with a nonenumerated article, which, perhaps more by resort to legislative history than upon the basis of the statute itself, is deemed classifiable under the so-called basket clause for certain metal manufactures.

We have been unable to find any authority to support the application of the *ejusdem generis* rule in considering whether a particular

article of merchandise may fall within a paragraph general in terms and not embracing any specifically-named article with which the article under consideration may be compared, and, so far as now advised, we are unable to discern how such rule could be so applied. Hence, we are not called upon here to determine whether the involved wreaths are *ejusdem generis* with lighting fixtures, and the legislative history recited and relied upon by the Government is without persuasive force here. It may be remarked, incidentally, that such history would seem to support the conclusion reached by both the trial court and this court in the *Khouri & Bro.* case, *supra*, although it was not recited in our decision there.

We now consider the question of whether the wreaths which are articles containing an electrical element (already held to be essential) are such as electric signs.

The brief on behalf of the Government states:

* * * we respectfully submit that the one word, "signs", used in paragraph 353 of the Tariff Act of 1930, is of itself subject to various interpretations. There are electric signs which consist merely of an electric light and the lettering. Some signs are illuminated by electric lights focused upon the sign. Other signs are made by the electric lights themselves spelling out the words. There are also the electric signs for which Broadway is famous, and there are the neon signs. These are all so different in character that it would seem that the Congress did not intend to include the very simple electric light shining through cut-out letters in the same category as the neon signs or the more intricate flashing signs of Broadway. While a search of the tariff history of paragraph 353 does not shed any light upon the question of what Congress contemplated by "signs", it does disclose that Congress did not intend to include electrical lighting fixtures in paragraph 353.

The foregoing argument apparently implies that the court should endeavor to distinguish between signs which contain electrical elements or features and hold that not all such signs fall within the meaning of "signs" as used in paragraph 353, *supra*, and then hold that the involved wreaths are not "such as" those signs which do fall within the paragraph.

It is deemed sufficient to say that no record is presented here which seems to us to require or justify an exploration of that question. The word "sign" has many noun definitions. It is probably true that it is commonly thought of in a commercial sense, that is as a notice designed to advertise a business, but that there are many signs or notices intended for other than commercial uses is a matter of common knowledge of which we think judicial notice may be taken.

Noting particularly the suggestion to the effect that Congress "did not intend to include the very simple electric light shining through cut-out letters * * *," it seems sufficient to say that, upon the record here presented, we find nothing to support such suggestion, provided, of course, that signs of that character have within themselves

as integral parts elements dedicated to the production of such light by the use of electricity. If that question requires a different determination, it must be upon a record different from that now before us.

Upon full consideration of the case as presented, we discern no reason which would justify a reversal of the decision of the trial court, and, therefore, the judgment appealed from is *affirmed.*

BLAND, J., dissents.